Argued January 23, reversed and remanded March 13, 1957

IN THE MATTER OF THE APPLICATION
OF GEORGE FREDERICKS FOR A WRIT OF HABEAS CORPUS
FREDERICKS *v.* GLADDEN
308 P. 2d 613

*Merlin Estep,* of Salem, argued the cause for appellant. On the brief were Williams & Skopil, Salem, and Hewitt, Estep & Sorensen, of Salem.

*Peter S. Herman,* Assistant Attorney General, of Salem, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General, of Salem.

McALLISTER, J.

This is an appeal by plaintiff, George Fredericks, from an order of the circuit court of Marion county dismissing a habeas corpus proceeding brought by plaintiff to obtain his release from the state penitentiary. On November 29, 1945, plaintiff entered the state penitentiary to serve a sentence of 15 years for the crime of assault with intent to rob and remained therein until he was released on November 29, 1955, under the following circumstances.

On November 1, 1955, the defendant, Clarence T. Gladden, warden of the penitentiary, wrote a letter to

Governor Paul Patterson, the material portions of which read as follows:

"        STATE OF OREGON

OREGON STATE PENITENTIARY
2605 State Street
Salem, Oregon

November 1, 1955

Hon. Paul Patterson
Governor
State of Oregon
Salem, Oregon

Dear Governor Patterson:

In compliance with the Provisions of Chapter 505 Oregon Laws 1955, (ORS 421.120 Revised), I hereby certify that the inmates listed below are entitled to "Good Time" credits as indicated; scheduled for release month of November, 1955:

| NAME | NUMBER | SENTENCE | STATUTORY GOOD TIME |
|---|---|---|---|
| * * * * * | | | |
| FREDERICKS, George | 18156 | 15 years | 4 yrs. 11 mos. 29 days |
| * * * * * | | | |

Respectfully submitted,
s/ C. T. Gladden
C. T. GLADDEN
Warden

APPROVED:

s/ Paul Patterson
PAUL PATTERSON
Governor                                    "

The letter contained other columns headed "Industrial Good Time," "Annex Good Time," "Forest Camp Good Time," and "Parole Good Time Restored" but since plaintiff was not given good time credits in any of those columns, they have been omitted from the copy of the letter set out above.

Pursuant to the foregoing letter and the approval thereof by the governor, the plaintiff was discharged from the penitentiary on November 29, 1955, and remained at liberty until May 4, 1956, when he was taken into custody by employees of the penitentiary acting under directions of the warden and returned to the penitentiary where plaintiff has since been confined. The warden concedes that plaintiff was taken into custody and reimprisoned without any authority other than the original judgment of conviction.

The reimprisonment of plaintiff resulted from a change in the construction placed by the warden upon ORS 421.120, the material portion of which, reads as follows:

"(1) Each prisoner now or hereafter confined, in execution of the judgment of sentence upon any conviction, in the penitentiary, for any term other than life, and whose record of conduct shows that he faithfully has observed the rules of the institution, and where industry and general reformation are certified to the Governor by the warden of the penitentiary, shall be entitled, upon the order of the Governor, to a deduction from the term of his sentence to be computed as follows:

"* * * * *

"(b) Upon a sentence of more than one year, 10 days for each month of actual service of such sentence in the penitentiary.

"* * * * *."

It appears that paragraph (b) as quoted above had been erroneously construed by the prison officials for a considerable period to authorize the deduction of one-third of the total sentence imposed. In accord with such construction, a good time deduction of one-third of his 15 year sentence was granted to plaintiff and he was released after serving 10 years.

Beginning about April, 1956, a new and correct administrative interpretation of the above provision was adopted under which each prisoner entitled thereto was granted 10 days off the end of his sentence for each complete month of actual service in the penitentiary, which resulted in a maximum deduction of approximately one-fourth of the total sentence. Under the new interpretation plaintiff would have to serve 135 months in order to earn a good time credit of 45 months, which credit added to the time served would total 180 months, or 15 years. Since the plaintiff had been released after serving only 120 months or approximately 15 months less than required under the above provision as properly interpreted, the warden caused plaintiff to be taken into custody to complete the service of his sentence.

On May 7, 1956, immediately after his reimprisonment, plaintiff filed in the circuit court for Marion county a petition for a writ of habeas corpus which was issued. After a hearing the court entered an order dismissing the proceedings and remanding plaintiff to the custody of the warden, from which order this appeal is taken.

By his only assignment of error plaintiff contends that he is now unlawfully imprisoned because he was unconditionally discharged from the penitentiary on November 29, 1955, upon the order of the governor based upon the certification of the warden that plain-

tiff was entitled to be released; that such certification, order and release were all in accord with regular and well established procedures and that plaintiff's discharge did not result from misrepresentation of any kind.

In his brief plaintiff argues in effect, first, that his discharge was pursuant to the constitutional power of the governor to grant pardons and commutations, second, that such order of discharge was irrevocable, and third, if such order of discharge was revocable, it could only be revoked by the governor or by a court of competent jurisdiction.

It is obvious that if plaintiff was released on November 29, 1955, pursuant to an unconditional pardon or commutation granted by the governor acting under the authority vested in the chief executive by the constitution, the subsequent arrest and reimprisonment of the plaintiff by the warden was unlawful. It is therefore necessary for us to determine whether the plaintiff was released from the penitentiary by an act of the governor performed under the authority vested in him by the constitution or by an act performed solely under the authority of ORS 421.120.

The Oregon Constitution, Art V, § 14, insofar as material, provides as follows:

> "He [the governor] shall have power to grant reprieves, commutations, and pardons, after conviction, for all offences (sic) except treason, subject to such regulations as may be provided by law. * * *"

We find no statute presently in force which purports to regulate the power to grant reprieves, commutations and pardons vested in the governor by the constitution. Although it has been argued that ORS 421.120 and 143.040, by implication, restrict or limit

this power of the governor, we do not agree. We believe that if the legislature should deem it advisable to regulate the constitutional pardoning power of the governor, it will do so in clear, direct language and not attempt such regulation by implication.

From our examination of the record, we agree with the trial court that plaintiff was not released as a result of any act performed by the governor pursuant to his constitutional authority. The above letter addressed to the governor by the warden, clearly states that *in compliance with the provisions of ORS 421.120,* the warden is certifying that the designated prisoners are entitled to the good time credits enumerated therein and are scheduled for release during the month of November, 1955. By his signature, the governor merely authorized the granting of the good time credits to which each listed prisoner was entitled *under the provisions of ORS 421.120,* as certified by the warden. We find no merit in the argument that in affixing his signature to the letter, the governor was ignoring the provisions of ORS 421.120, and granting an unconditional pardon or commutation to each of the 32 prisoners listed. Although a pardon may be granted or a sentence commuted with little formality, it is necessary that the executive use some appropriate language indicating an intention to grant such a pardon or commutation. In the case at bar, the governor clearly intended only to approve the release of those prisoners whose good time credits, as certified by the warden pursuant to ORS 421.120, entitled them to release during November, 1955.

In order to determine whether the warden was authorized by ORS 421.120 to arrest and reimprison plaintiff, it will be helpful to consider the legislative history of said section. Prior to 1937, good time credits

were granted to prisoners in the penitentiary under the provisions of § 13-1906, Oregon Code 1930, which had originally been enacted as a part of ch 187, Oregon Laws 1905, and the first sentence of which read as follows:

> "Any person sentenced to serve an indeterminate sentence in the penitentiary *may be paroled* by the governor upon his own motion, or upon the recommendation of the parole board, in accordance with the provisions of this section set forth, to wit: "* * * * *."" (Italics supplied)

In *Fehl v. Martin,* 155 Or 455, 64 P2d 631, this court pointed out that said section was not actually a good conduct statute but pertained to the granting of paroles and used the following language:

> "It seems obvious from a mere reading of the section, that that section was intended to apply to the granting of paroles and was not intended by the legislature, where no parole was granted, to shorten the term for which a prisoner may be sentenced. That the legislature had the power to provide that, because of the good behavior of a prisoner in the penitentiary, his sentence should be shortened is not questioned. If such had been the intention of the legislature, it is reasonable to infer that the legislature would have said so in some plain and unmistakable manner without any reference to the granting of paroles * * *.""

A review of the historical background of said § 13-1906 and related legislation is contained in the comprehensive specially concurring opinion of Mr. Justice BAILEY in *Fehl v. Martin,* supra.

*Fehl v. Martin,* supra, was decided on January 19, 1937, during the 39th regular session of the legislative assembly and said assembly thereafter enacted ch 268, Oregon Laws 1937 which has become ORS 421.120.

As originally enacted the material portion of chapter 268 read as follows:

"Section 1. That each prisoner who is now confined, or hereafter may be confined, in execution of the judgment of sentence upon any conviction, in Oregon state penitentiary, for any term other than life, and whose record of conduct shows that he faithfully has observed the rules of the institution, and where industry and general reformation shall be *certified to by the warden of the penitentiary,* shall be entitled, *upon the recommendation of the warden of said penitentiary,* to a deduction from the term of his sentence and be computed as follows:

"(a) Upon a sentence of not less than six months nor more than one year, five days for each month of actual service of such sentence in said penitentiary.

"(b) Upon a sentence of more than one year, 10 days for each month of actual service of such sentence in said penitentiary.

"* * * * *." (Italics supplied)

It will be observed that the above section requires the certification by the warden of the industry and general reformation of the prisoner and the recommendation of the warden to entitle a prisoner to any deduction from the term of his sentence but does not state to whom the certification or recommendation shall be made. The record does not disclose what administrative procedure was followed in granting good time credits under this section as originally enacted. It may be that after certifying to the industry and general reformation of the prisoner, the warden made a recommendation to himself that the prisoner was entitled to a specified deduction from the term of his sentence and based thereon, released the prisoner without any supervision or control by the governor or other official.

ORS 421.120 was first amended by ch 560, Oregon

Laws 1953, which did not change the portion of the act quoted above, but merely added provisions authorizing additional good time credits for employment in prison industry, agriculture and work camp and pertaining to the good time credits of parole violators.

Section 421.120 was last amended by ch 505, Oregon Laws 1955 so that said section read as follows:

"(1) Each prisoner now or hereafter confined, in execution of the judgment of sentence upon any conviction, in the penitentiary, for any term other than life, and whose record of conduct shows that he faithfully has observed the rules of the institution, and where industry and general reformation are certified *to the Governor* by the warden of the penitentiary, shall be entitled, *upon the order of the Governor,* to a deduction from the term of his sentence to be computed as follows:

"(a) Upon a sentence of not less than six months nor more than one year, five days for each month of actual service of such sentence in the penitentiary.

"(b) Upon a sentence of more than one year, 10 days for each month of actual service of such sentence in the penitentiary.

"(c) Upon any sentence, two days for each month of actual work in prison industry, or in meritorious work in connection with prison maintenance and operation, during the first year of prison employment, four days for each month of such work after the first year to and including the fifth year of prison employment, and five days for each month of such work after the fifth year of prison employment.

"(d) Upon any sentence, three days for each month of actual work in agriculture or at work camp during the first year of prison employment, and five days for each month of such work thereafter.

"(e) The deductions allowed in paragraphs (c)

and (d) of this subsection shall be in addition to those allowed in paragraphs (a) and (b) of this subsection.

"(f) In this subsection, ' "prison employment" ' includes actual work in prison industry, meritorious work in connection with prison maintenance and operation, actual work in agriculture and actual work at work camp.

"* * * * *." (Italics supplied)

It will be noted that it was specifically provided that the warden should certify the industry and general reformation of the prisoner "to the governor" and that the prisoner should be entitled "upon the order of the governor" to a deduction from the term of his sentence to be computed as provided in subparagraphs (a) to (f), inclusive.

One result of this amendment has been to vest in the governor a dual authority to release prisoners, one, by virtue of the constitution, and the other, by virtue of the above statute. The governor can still commute the sentence of any prisoner at any time under his constitutional authority or can order the release of a prisoner upon the certification of the warden pursuant to the good conduct statute set out above.

■ Another result of the 1955 amendment has been to limit the authority of the warden under this statute to certifying to the governor the good conduct, industry and general reformation of the prisoner and the extent of good time credits to be deducted from his sentence. The amendment obviously was intended to and did revoke any authority which may have been vested in the warden by the original act to grant good time credits and to release a prisoner before the expiration of his sentence without the approval of the governor.

■ Under these circumstances we hold that the war-

den had no authority to arrest plaintiff in May, 1956, and return him to the penitentiary to complete the service of his sentence. Since the 1955 amendment deprived the warden of the authority to order the release of a prisoner and vested that authority in the governor, we believe that the power to correct a mistake made in ordering the release of a prisoner was also taken from the warden and vested in the governor.

The record indicates that at least three different wardens have interpreted ORS 421.120 (1) (b) to authorize the granting of good time credits equal to one-third of the total sentence, and it is possible that this section was so interpreted from the time the statute was enacted in 1937 until about April, 1956. In any event, it is probable that there are many hundreds of prisoners who have been granted good time credits amounting to approximately one-third of their sentences and released prematurely. If this be so, all of these former prisoners would be subject to arrest and return to the penitentiary by the warden without any more formality than attended the arrest and reimprisonment of plaintiff. Since many of these people have been at liberty for long periods of time, and presumably have rehabilitated themselves and become useful members of society, the adoption of such a course by the prison officials would obviously be intolerable.

We believe that if the warden discovers that an erroneous certification has been made to the governor, he should confine himself to the making of a full disclosure of the facts to the chief executive who can then take appropriate action to rectify the mistake. Several courses of action will be available to the governor depending upon the circumstances of the particular case. If he wishes to do so, the governor can rectify an error in the computation of good time credits

by exercising his constitutional power of commutation. *Fehl v. Martin,* supra.

In other cases, it may be deemed advisable to seek a judicial determination of the rights involved before further action is taken. See *Rathbun v. Baumel,* 196 Iowa 1233, 191 NW 297. If the circumstances indicate the advisability of summarily ordering the arrest of the released prisoner and his return to the penitentiary, we believe this action should be taken by the governor and not by the warden on his own initiative.

■ It is argued on behalf of the defendant that the plaintiff was a constructive escapee during his period of liberty from November 29, 1955, to May 4, 1956. We would agree if plaintiff had secured the order of the governor authorizing his release by fraud, misrepresentation or other illegal means. We would further agree that under those circumstances summary action could be taken by the governor to return the prisoner to the penitentiary. In this case, however, the defendant concedes that no fraud or deceit was committed by plaintiff in obtaining his release. In fact it was stipulated in effect that plaintiff was released on November 29, 1955, in accordance with a well established practice of computing good time credits equal to approximately one-third of the total sentence. The plaintiff was merely a passive recipient of the benefits of that practice and in our opinion could not under those circumstances be treated as a constructive escapee.

The cause is remanded to the circuit court with directions to vacate the order appealed from and to enter a judgment ordering the defendant to discharge plaintiff forthwith, but without prejudice to the right of the governor to take such action as he may deem advisable in the premises. The mandate in this cause shall be issued forthwith.