Argued on rehearing June 20, affirmed, former opinion withdrawn
in part September 18, 1957

# FREDERICKS *v.* GLADDEN

315 P. 2d 1010

*Merlin Estep,* Salem, argued the cause for appellant. On the brief were Williams & Skopil, and Hewitt, Estep & Sorensen, all of Salem.

314

*Peter S. Herman,* Assistant Attorney General for Oregon, Salem, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General for Oregon.

BRAND, J.

The first opinion of this court was handed down on March 13, 1957, 209 Or 683, 308 P2d 613. That opinion held that the plaintiff, George Fredericks, was prematurely released from the penitentiary by reason of an incorrect computation of the amount of "Good Time" to which he was entitled. ORS 421.120(1)(b). We agree. The court then considered whether or not the plaintiff received his discharge from imprisonment by the exercise of the constitutional power of the governor to grant pardons and commutations or whether the discharge was solely pursuant to the provisions of ORS 421.120 not involving the pardon power of the governor. The court arrived at the conclusion that the result of the statute was "to vest in the governor a dual authority to release prisoners, one, by virtue of the constitution, and the other, by virtue of the above statute." The opinion held that the plaintiff was not released as a result of any act performed by the governor pursuant to his constitutional authority. Again, we agree. In substance, the court held that the defendant was unlawfully released but that the warden had no authority to arrest the plaintiff and return him to the penitentiary to complete the service of his sentence. With this portion of the decision we disagree, as will later appear. From this decision a petition for rehearing was granted. The case was again argued and is now before us for further consideration. It has been suggested that we erred in failing to hold that the plaintiff was

released by act of the governor in the exercise of his constitutional power to grant pardons. It is argued that the governor was vested with the complete constitutional power to commute sentences and that ORS 421.120 neither enlarged that power nor vested in the governor any additional overlapping or duplicate power. It is further argued that the plaintiff was finally and unconditionally released by the exercise of the governor's pardoning power which includes the power of commutation. The consequence of this theory, if adopted, would be to reject our earlier conclusion which was to the effect that the error in the premature release of the prisoner could be rectified by action of the governor or through invoking the power of the courts. If the governor in the exercise of his pardoning power, released the plaintiff, that would of course end the matter.

■ It has been thought necessary to consider the validity of good conduct statutes. All are agreed that such statutes are valid when they are not retrospective in effect and are of general application. It is said that good conduct statutes have been held invalid in some cases when they were challenged on the ground that they were being applied retroactively. But that question is not before us in this case. The 1937 law, Chapter 268 (now ORS 421.120(1)(b)) for the first time provided a true "Good Time" statute, one which provided that, on the making of the required certificate and recommendation by the warden, the prisoner *shall be entitled* to a deduction from the term of his sentence, as follows: "(b) Upon a sentence of more than one year, 10 days for each month of actual service of such sentence in the penitentiary,". That precise provision was in effect when the defendant was sentenced on 27 November 1945 and when the warden made his cer-

tificate and recommendation to the governor wherein he stated that "In compliance with the Provisions of Chapter 505 Oregon Laws 1955 (ORS 421.120 Revised), I hereby certify that the inmates listed below are entitled to "Good Time" credits as scheduled * * *." Then follows the name of George Fredericks, "Sentence 15 years", Statutory Good Time 4 yrs. 11 mos. 29 days." The section of statute to which the warden referred was a reenactment of the earlier provisions of Chapter 268, Laws of 1937. The application of that act to the case of the plaintiff could not be retroactive because it was enacted in 1937 and the defendant was not sentenced until 27 November 1945. It is true that statutes were enacted in 1953 and in 1955 which provided other and additional good time allowances, and if the warden had based his recommendation upon those provisions the question of retroactivity would have been involved. But the certificate signed by the warden and addressed to Governor Patterson shows that he was awarded "statutory" good time of 4 years, 11 months and 29 days. Following the columns headed "Statutory Good Time" are columns entitled "Industrial Good time", "Annex Good Time", "Forest Camp Good Time", and "Parole Good Time Restored". Under each of these columns and opposite the name of the plaintiff there is a blank, indicating clearly that no credit for good time was allowed him except credit for "Statutory Good Time". As stated in the first opinion of this court "plaintiff was not given good time credits in any of those columns". It will be recalled that defendant received a 15-year sentence which he began serving on 29 November 1945 and that he was released on 29 November 1955. This demonstrates that the credit he received was exactly one-third of the full time of his sentence, which was in accordance with the

erroneous interpretation which had prevailed as to the proper effect of Chapter 268, Laws of 1937 (now ORS 421.120(1)(b)). It cannot be argued that he received credit for good time on any other basis and, as the court said in its first opinion, the plaintiff was released 15 months too early under the 1937 statute properly construed. The conclusion which must be drawn is that plaintiff was released under an erroneous construction of the provisions of the 1937 act which operated on his case prospectively. The 1953 and 1955 provisions for additional good time credits were not involved in any way and no question of retroactivity is in this case.

■ We will now consider the analogy of statutes providing for parole of prisoners. Such statutes do not involve any exercise of the pardon power of the governor even when the power of parole is vested in that official. In *Anderson v. Alexander* (191 Or 409, 229 P2d 633, 230 P2d 770, 29 ALR2d 1051) we upheld and enforced the provisions of our parole law which vests in the parole board the power to parole prisoners without any participation by the governor. To hold that such a parole is an exercise of the pardon power and therefore unconstitutional would be unthinkable and contrary to a multitude of decisions including the Anderson case. A hasty examination of the statutes of various states shows that the power of parole has been vested in parole boards without any participation by the executive in the federal system, 18 USCA 4201-4207, and by statute in many states, including California (Cal Pen Code, §§ 3000-3200); Illinois (Smith Hurd Ill Stat Ch 127, § 55b); Michigan (Mich Stat Ann 28.2301-28.2315); New Jersey (NJ Stat Ann 30.4, 123.1-123.44); New York (NY Correc Law 210);

Pennsylvania (61 Purdon's Penn Code 331.1); Washington (Rev Code of Wash 9.95).

■ Turning to the much discussed case of *Fehl v. Martin,* 155 Or 455, 64 P2d 631, we find that the case arose under Oregon Code 13-1906 (1930). That statute as construed gave the governor power to parole prisoners but only under conditions specified in the act. It was held that the act was not a "good time" act authorizing the termination of imprisonment as in the case of a pardon but only purported to control the exercise of the power of the governor to parole. The distinction between the two types of statute is clear. In *Anderson v. Alexander,* supra, we pointed out that a parole does not obliterate the crime or forgive the offender. It is not an act of clemency. Parolees remain in constructive custody and under guidance. A pardon, on the contrary, is the exercise of the sovereign prerogative of mercy. It completely frees the offender from the control of the state. It was *assumed* in the first opinion in *Fehl v. Martin* that a parole was a conditional pardon. If that assumption was correct, then the conditions imposed by OC 13-1906 (1930) would have been unconstitutional. What the court said was merely that "no act of the legislature could take away from the governor the power to grant an absolute or a conditional pardon", which of course is true, but the court did not directly hold OC 13-1906 (1930) unconstitutional and the opinion of Justice BAILEY clearly points out that the question as to whether the parole statute was in contravention of Article V of the Oregon Constitution which confers upon the governor exclusive authority to grant reprieves, commutations and pardons was "not involved in this appeal."

■ In the light of the rulings in *Anderson v. Alexander* it is clear that a parole statute cannot be an exer-

cise of the pardon power. Under OC 13-1906 (1930) it was an additional authority vested in the governor which enlarged the prison confines but did not end the imprisonment or the sentence or shorten the term thereof. Through a long series of acts the power of the governor to parole prisoners was granted and restricted with no thought of limiting or affecting his constitutional powers of pardon. See Laws, 1905, Ch 187; Laws, 1911, Ch 127; Laws, 1917, Ch 302; Laws, 1919, Ch 150; Laws, 1920, Special Session, Ch 8; Laws, 1921, Ch 110. The foregoing statutes all referred to a time when the power of parole was by statute vested in the governor, and during all this time we find no decision of this court questioning the validity of the parole statute or of the numberless paroles granted thereunder except as above stated. Thus the power to parole vested in the governor found its origin in statute, not in constitution. The question suggests itself, why then cannot the legislature also vest in the governor the duty and authority to approve a recommendation of the warden for a good time allowance without any way infringing on his constitutional power of pardon? The pardon power is the power to release a prisoner and to completely free a prisoner from the power of the state. *Anderson v. Alexander,* supra. A commutation, a form of pardon unless expressly made conditional, also completely frees the prisoner from the power of the state after the effective date of the commutation.

We agree that the governor is vested with the complete power to pardon or commute any sentence from the day on which the defendant is imprisoned and at any time thereafter during imprisonment. But the governor's constitutional power is the exercise of the sovereign prerogative of mercy. It is not a power to keep a person in prison. It is a power to free him.

We see no limitation of the pardon power in a statute which, if not retroactive, validly shortens a sentence by the allowance of good time. (Whether a retroactive good time statute is unconstitutional is a matter on which we now express no opinion.) If the governor so desired he could pardon or commute any sentence before the time for the prisoner's release. How then is his constitutional power restricted by the good time statute?

Our attention has been directed to *In re Conditional Discharge of Convicts,* 73 Vt 414, 51 A 10 (1901). The statement made by that court must be placed in its proper context. The court was discussing the unrestricted power of the governor to grant pardons which was said to include the authority to grant all kinds of pardon known to the common law, including full, partial, absolute or conditional pardons. Of such pardon power the court said: "This power can neither be restricted nor taken away by legislative action. Nor can a like power be given by the legislature to any other officer or authority." 73 Vt 414, 420. We agree with this pronouncement when it is properly understood. The pardon power cannot be restricted and no *like* power can be given to others. But we beg the question if we say that a good time statute is a *like* power. The Vermont court was discussing a statute empowering the governor to "discharge" a convict and it said a "discharge" is a conditional pardon. The name was "of but little consequence." Concerning Act No. 126 of Laws, 1898, the Vermont court said:

> "* * * The effect of this act would be to transfer the power of conditional pardon from the governor to the board of prison commissioners, which, as before seen, cannot be done by legislative action; and section 8 of No. 126 is unconstitutional

and void." *In re Conditional Discharge of Convicts,* 73 Vt 414, 421.

Surely there is a self-evident distinction between a statute transferring the governor's power of conditional pardon and a good time statute prospectively shortening the term of imprisonment subject to the power of the governor to exercise the pardon power at a time earlier than provided in the good time statute. Finally, the Vermont court held that a parole is a conditional pardon and the statute authorizing paroles by prison authorities is unconstitutional and void. We may safely assume no one will subscribe to the proposition that our law which vests in the parole board the power to grant paroles is unconstitutional. To hold that would be to turn the clock back 50 years and destroy the greatest system known for the control and rehabilitation of convicts.

We have been referred to *Ex parte Costello,* 22 Wash2d 697, 157 P2d 713, and it is argued that "If the legislature can not give a little power to any other officer, how can it give a little power to the same officer who already has the complete power?" True, the legislature cannot give a little of the *governor's pardon power* to any other officer. It is also true that a legislature cannot enlarge a power already full and complete, but here again there appears the danger of begging the question. If a good time statute does not trespass upon the pardon power it may be valid, and if the duty imposed upon the governor by the good time statute does not affect this pardon power but relates to a different matter, then such a statute is not an attempt to enlarge a power which is great beyond enlargement. It merely gives him a collateral duty outside of the purview of his pardon power. *Ex parte*

*Costello* is not in point on the issue presently before this court. In that case the governor issued a conditional pardon which was expressly made revocable at any time. The petitioner Costello was released under the conditional pardon. He violated the conditions thereof and the governor revoked the pardon. Petitioner in habeas corpus then claimed that an order made by the parole board amounted to a final discharge. The Washington Supreme Court held in substance that the parole board had no authority to grant "a final discharge" which would release petitioner from the conditions imposed by the governor's conditional pardon.

■ Based upon the cases which we have considered *supra*, it has been argued that "in releasing plaintiff the governor acted pursuant to his constitutional authority to grant commutations and thus terminated plaintiff's sentence on November 29, 1955." We hold that the good time statute was not, as to the plaintiff, retroactive and did not invade the governor's pardoning power (*Fite v. State,* 114 Tenn 646, 88 SW 941 (1905)) and that the act of the governor in approving the warden's certificate in no way involved or limited his pardoning power. Here a statute which was passed in 1937 provides that each prisoner "hereafter confined * * * whose record of conduct shows that he faithfully has observed the rules of the institution, and where industry and general reformation are certified to the Governor by the warden * * * *shall be entitled* upon order of the Governor, to a deduction * * *." ORS 421.120. (Emphasis ours.) "Entitled" is defined as follows: "To give a right or legal title to". Webster's International Dictionary, 2d ed. Plaintiff was thereafter imprisoned, and at a later time the warden made the required certificate. That certifi-

cate was made in compliance with the provisions of Chapter 505, Laws of 1955 (ORS 421.120) which was also Chapter 268, Laws of 1937. It certified to the good time credits of 32 convicts, including the plaintiff. The certificate is in the form of a letter addressed to the governor, and at the lower left-hand corner appear the words "APPROVED s/ Paul Patterson, Governor". This is not the procedure followed or prescribed for the exercise of the pardon power. We should not assume that the governor intended a *mass* pardon of 32 prisoners by his mere endorsement of the certificate.

In *Carpenter v. Lord,* 88 Or 128, 171 P 577, this court said:

"* * * It is true that the Governor may pardon an offender by virtue of his constitutional power in that behalf, but even that is not effective unless it is accepted by the prisoner to whom the pardon is offered. As said by Mr. Chief Justice Marshall in United States v. Wilson, 7 Pet. (U.S.) 150 (8 L. Ed. 640):

"'A pardon is a deed, to the validity of which, delivery is essential, and delivery is not complete, without acceptance. It may then be rejected by the person to whom it is tendered; and if it be rejected, we have discovered no power in a court to force it on him.'" And see, 67 CJS 574, Pardons, § 10b; and 39 Am Jur 546, Pardon, Reprieve and Amnesty, §§ 45, 46, 47.

■ The early case of *Ex parte Ridley,* 3 Okla Cr 350, 106 P 548, is not in harmony with the rule in Oregon and many other states concerning the power of the legislature to provide for a system of parole by bodies other than the governor, but that opinion is directly in point on the issue before this court. We quote:

"* * * We are of opinion, upon an examination of the authorities and upon principle, that an

act of the Legislature specifically defining credits for good behavior, in existence at the date of the judgment against the prisoner, becomes a part of the sentence and inheres into the punishment assessed, and is not an invasion of the constitutional prerogative of the Governor."

We hold that the statute gave the prisoner a right to have his sentence shortened for good behavior under the conditions specified and that the terms of the Oregon good behavior statute were written by implication into the sentence imposed upon the prisoner by the court.

■ No doubt the governor had a right and perhaps a duty to satisfy himself that the facts stated in the certificate were such as to entitle the prisoner to discharge under the provisions of the statute. In this case the governor relied upon the certificate and signed it, acting perhaps under the same misapprehension as to the meaning of the statute which had for some time prevailed by former wardens. The fact remains that the statute did not entitle the plaintiff to a discharge "in compliance" with the provisions of the statute cited in the certificate. The warden's certificate did not disclose to the governor the dates of the sentence or of the confinement and the governor could not tell therefrom whether or not plaintiff was "entitled" to the reduction as set forth in the certificate. It is conceded that the plaintiff was not so entitled and that the making of the certificate, so far as plaintiff is concerned, was an excusable error on the part of the highly competent warden who followed the earlier incorrect construction of the law until he was informed of the true meaning thereof. Concededly, the warden had no authority to certify that plaintiff was entitled to be released in November 1955. The certificate was

illegal and void. 67 CJS 366, Officers, § 102. We hold that premature release of the prisoner was illegal. The governor could then or at any time thereafter have freed the plaintiff by the exercise of his unquestioned power of pardon, but the record shows that he did not exercise that power. The approval by the governor of a void certificate of the warden could not be considered to be a valid release under the statute, and obviously such a certificate did not follow the procedure recognized as requisite to constitute a pardon.

██ Article V, § 14, of the Constitution of Oregon vests in the governor the full pardon power "subject to such regulations as may be provided by law." There do not appear to be any legislative regulations attempting to limit the substantive power. But statutes have been passed pursuant to the constitution regulating procedure. See *Ex Parte Bustillos,* 26 NM 449, 194 P 886. Under ORS 143.050 and 143.060 the governor is required to communicate to the legislature at its next meeting each case of the exercise of the pardon power "with the reason for granting the same, stating the name of the convict, the crime of which he was convicted, the sentence and its date, and the date of the commutation, pardon or reprieve." He must "file all the papers presented to him in relation thereof in the office of the Secretary of State, * * *." There is no evidence that any papers were filed pursuant to this statute or that any pardon of the plaintiff or any of the 32 prisoners was reported to the legislature. We are not suggesting that the governor violated his duty. On the contrary, it is apparent that he did not exercise or intend to exercise the pardon power and therefore was not required to and did not comply with the statutory provisions concerning pardons. Our conclusion is that the governor approved the release under a mis-

take of fact in the attempted performance of a duty imposed upon him by the statute, and that the plaintiff was thereafter illegally at large. The trial court held that on such a release plaintiff was a constructive escapee. We think the trial court was right and that the habeas corpus proceedings were properly dismissed. If at a time when the defendant was illegally at large he was apprehended and returned to the penitentiary, his term not having then expired, we need not inquire how he got there. *Hopkins v. North,* 151 Md 553, 135 A 367, 49 ALR 1303; *State v. Endsley,* 122 Tenn 647, 126 SW 103, 104 (1910); *Simpson v. State,* 56 Ark 8, 19 SW 99, 101; *Anderson ex rel Poe v. Gladden,* 205 Or 538, 288 P2d 823; 15 Am Jur 160, Criminal Law, § 512.

We detected in the final brief of the Attorney General some apprehension as to results which might follow if it should be held that a good time statute could not constitutionally be given retroactive effect. If such a holding should in the future be made and if undue hardship or injustice should result from action taken by officials on the assumption that such good time statutes could be given retroactive effect, an adequate and prompt remedy could be found in the pardon or commutation power of the governor by the exercise of which the legislative intent could be lawfully effectuated.

In so far as the original opinion of this court is inconsistent with what we have said here, it is withdrawn. The judgment of the circuit court dismissing the habeas corpus proceedings is affirmed.

McALLISTER, J., dissenting.

A petition for rehearing filed by the defendant was granted and this case reargued. After further con-

sideration I have concluded that the result of our former opinion was proper but that it should have rested on a more fundamental ground. In an effort to give due consideration to acts of the legislative department, the court failed to give adequate consideration to the exclusive power over reprieves, commutations and pardons vested by the constitution in the executive department of our government.

The provision of our constitution involved in this case is contained in Art V, § 14 as follows:

"He [the governor] shall have power to grant reprieves, commutations, and pardons, after conviction, for all offences (sic) except treason, subject to such regulations as may be provided by law. * * *"

The pardoning power vested in the governor will be referred to herein as inclusive of the power to grant commutations. A commutation is generally defined as "a change of punishment to which a person has been condemned to one less severe." See *Fehl v. Martin,* 155 Or 455, 64 P2d 631.

Although some state constitutions grant to the legislature the power to *restrict* or *limit* the pardoning power, it is important to note that under our constitution the legislature may only *regulate* the power vested in our governor by the above provision. This was pointed out very emphatically by Mr. Justice RAND in his opinion in *Fehl v. Martin,* supra, in the following language:

"* * * the constitutional power of pardoning vested in the governor is not subject to legislative control, either to limit the effect of a pardon or to exclude from its operation any class of offenders: Ex parte Garland, 4 Wall. 333 (18 L. Ed. 366). And, therefore, no act of the legislature could take away from the governor the power to grant an absolute

or a conditional pardon at any time after sentence has been pronounced."

In our original opinion we said that one result of the 1955 amendment to ORS 421.120 was to vest in the governor a dual authority to release prisoners, one, by virtue of the constitution and the other, by virtue of the statute. We also said that in releasing plaintiff, the governor was not acting pursuant to his constitutional authority. After further consideration, I believe those statements were in error. The governor was vested with the complete power to commute sentences by the constitution and ORS 421.120 neither enlarged that power nor vested in the governor any additional overlapping or duplicating power.

In referring to the pardoning power vested in the governor by the constitution of Vermont, the supreme court of that state, in *In Re Conditional Discharge of Convicts,* 73 Vt 414, 420, 51 A 10, said:

"\* \* \* This power can neither be restricted nor taken away by legislative action. Nor can a like power be given by the legislature to any other officer or authority: Cooley's Con. Lim. 133."

A similar statement was made by the supreme court of Washington in *Ex parte Costello,* 22 Wash2d 697, 157 P2d 713. If the legislature can not give a like power to any other officer, how can it give a like power to the same officer who already has the complete power?

The completeness of the governor's constitutional pardoning power was recognized in *Fehl v. Martin,* supra, when it was referred to as "the whole power" in the following portion of the opinion:

"It will thus be seen from a mere reading of this provision of the constitution [Art V, § 14] that *the whole power* to grant reprieves, commutations and

pardons after conviction for all offenses except treason, subject to such regulations as may be provided by law, is committed to the governor." (Italics supplied)

I now conclude that in releasing plaintiff the governor acted pursuant to his constitutional authority to grant commutations and thus terminated plaintiff's sentence on November 29, 1955. The reasons which have caused me to reach this conclusion will be briefly stated.

The constitutionality of good conduct statutes has been frequently challenged on the ground that they infringe either the power of the executive or the power of the judiciary. It is now well established that such statutes are valid when they are not retrospective in effect and are of general application. On the other hand, good conduct statutes which were retrospective in effect have been held invalid in most cases where they were challenged on that ground. The leading cases on that point include: *Commonwealth v. Halloway* (1862), 42 Penn 446, 82 Am Dec 526; *Ex parte Darling* (1881), 16 Nev 98, 40 Am Rep 495; *Ex parte Clawson* (1887), 5 Utah 358, 15 P 328; *State v. McClellan* (1888), 87 Tenn 52, 9 SW 233; *Fite v. State* (1905), 114 Tenn 646, 88 SW 941; *Ex parte Woodburn* (1909), 32 Nev 136, 104 P 245.

In one of the earliest cases the supreme court of Tennessee stated the rule in *State v. McClellan,* supra, as follows:

"The act of 1885 (passed at the extra session, June 12), Acts Ex. Sess., p. 87, is also referred to, and it is insisted that the relator was and is entitled to the benefit of that act, but such cannot be its effect, though it purports to be for the benefit of those then as well as thereafter confined in the

penitentiary, because to the extent of provision for those then confined, it is an attempted exercise of the pardoning power which is vested alone in the Governor under the Constitution, and is void. * * *"

In a later Tennessee case, *Fite v. State,* supra, the rule applicable to retrospective good conduct statutes was stated in more detail by McAlister, J., as follows:

"We are of opinion, upon an examination of the authorities and upon principle, that such legislation, where the credits are specifically defined by statute, and where the provisions of the statute operate alone upon sentences of convicts who have been imprisoned subsequent to the passage of the statute, is not an invasion of the constitutional prerogative of the Governor. * * *

"We think it quite obvious that an act of the Legislature specifically defining credits for the good conduct, in existence at the date of the judgment against the convict, becomes a part of the sentence, and inheres into the punishment assessed. * * *

"* * * * * .

"Such, however, would not be the effect of an act of the Legislature passed subsequent to the conviction of a particular convict, for, as held in State ex rel. v. McClellan, supra, that would be a clear invasion of the prerogative of the Governor. * * *"

The supreme court of Utah in *Ex parte Clawson,* supra, has stated the same rule in the following language:

"* * * If we should allow the act of the legislature passed since the sentence to control, it in effect is to say that the legislature can, after judgment, nullify the judgment, and set the prisoner free. If the legislature can reduce the sentence at all, subsequent to the sentence, it can reduce it to an unlimited extent. This would be encroaching

upon the authority of the executive, as it is the province of the executive, and not of the legislature, to reprieve or pardon. It would also be allowing the legislature to interfere with the judicial branch of the government, and to usurp its duties, and to make a sentence and judgment different from that entered in court. We are borne out in our view by the case of Ex parte Darling, 16 Nev., 98, and by the case of Com. v. Johnson, 42 Pa. St., 448."

It has also been held that an amendment operating retrospectively to increase the good conduct credits allowed by a prior statute renders such statute unconstitutional. In *Ex parte Woodburn,* supra, the supreme court of Nevada said:

"It is conceded that by reason of the good conduct of the said Hall he is entitled to be discharged, providing the said act of 1909 is applicable to his case. By the provisions of the last-mentioned act a prisoner serving a three-year sentence is entitled to eight months' credits for good behavior, while under the act in force at the time the prisoner was committed he would only be entitled to seven months' credits. The precise question here involved came before this court in the case of Ex Parte Darling, 16 Nev. 98, 40 Am. Rep. 495. In that case it was held that the legislature was without power to pass an act which, in effect, would commute any portion of the sentence imposed by the court prior to the time the act took effect, for the reason that the same interfered with the functions of the judiciary, and hence was violative of the constitution.

"* * * Our attention has not been called to the decision of any court taking a contrary view to that heretofore expressed by this court in the Darling case, and we see no sufficient reason for reversing the former decision of this court upon the question here involved."

To avoid the obvious constitutional objections to a retrospective good conduct statute the opinion of the majority on rehearing recommends that the governor be called upon, if necessity arises, to exercise his constitutional power to commute sentences. The majority say:

"We detected in the final brief of the Attorney General some apprehension as to results which might follow if it should be held that a good time statute could not constitutionally be given retroactive effect. If such a holding should in the future be made and if undue hardship or injustice should result from action taken by officials on the assumption that such good time statutes could be given retroactive effect, an adequate and prompt remedy could be found in the pardon or commutation power of the governor by the exercise of which the legislative intent could be lawfully effectuated."

In this instance the legislature appears to have found and adopted the recommended solution without benefit of advice from this court. According to the Attorney General's Survey on Release Procedure, US Gov Printing Office, 1939, Vol. 1, at least 11 states, including Oregon, have adopted this procedure. The reason therefor is concisely stated in *People v. Warden of New York County Pen.*, 178 NYS 595, 598, 109 Misc Rep 248, where the court said, "there can be no serious doubt of the validity of a statute, which, in the last analysis, leaves the decision with the Governor, as does the present one."

That the Oregon legislature has already adopted the solution recommended by the majority cannot be questioned. The 1955 amendment to the good conduct statute inserted language providing that the industry and general reformation of the prisoner should be certified "to the governor" by the warden and that the prisoner

shall be entitled "upon the order of the governor" to a deduction from the term of his sentence. This action was apparently taken to forestall any claim of invalidity resulting from the substantial increases in good conduct credits granted by the 1953 and 1955 amendments which were made retrospective in operation.

It is possible that the 1955 amendment enlisting the aid of the governor may also have been to make the statute conform to prior administrative practice. On this point the legislative history of our present good conduct statute is interesting. House Bill No. 16, which became ORS 421.120, was originally introduced at the 1937 session of the legislature on January 14, 1937, by Representative Ellis W. Barnes and others. On January 25, 1937, Representative Barnes, was advised in an opinion by the Attorney General (Atty Gen Ops 1936-38, 168) that the bill being retrospective in effect would violate Art III, § 1 of our constitution. Before the bill was enacted it was amended by adding thereto the phrase "and where industry and general reformation shall be certified to by the warden of the penitentiary." The statute as enacted read as follows:

"Section 1. That each prisoner who is now confined, or hereafter may be confined, in execution of the judgment of sentence upon any conviction, in Oregon state penitentiary, for any term other than life, and whose record of conduct shows that he faithfully has observed the rules of the institution, *and where industry and general reformation shall be certified to by the warden of the penitentiary,* shall be entitled, *upon the recommendation of the warden of said penitentiary,* to a deduction from the term of his sentence and be computed as follows:
\* \* \*. (Italics supplied)
"\* \* \* \* \*"

It is possible that from the effective date of this act the governor has always granted the good conduct credits upon the certification and recommendation of the warden and that the 1955 amendment by providing that the certification should be made to the governor and that the prisoner should be released upon the order of the governor merely made the statute conform to the administrative practice which had been followed since 1937. In any event, the 1955 amendment expressly enlisting the aid of the governor to terminate the sentence makes unnecessary any further inquiry as to the practice followed prior to that amendment.

The question involved in this case is not whether the good conduct statute was retrospective as applied to the plaintiff but what power the governor was exercising in terminating the plaintiff's sentence. The fact that the statute apparently did not operate retrospectively as to Fredericks is beside the point. What power did the legislature request the governor to exercise under a statute which in general was expressly intended to operate retrospectively? It was the same executive power, whether the statute in a particular case operated prospectively or retrospectively.

In my opinion, the power which the legislature requested the governor to exercise was the power to commute sentences vested in the governor by the constitution. This is also the conclusion finally reached by the Attorney General. On the oral argument on rehearing, counsel for the defendant said:

"It is our position that when the governor is acting under the statute [ORS 421.120] he is exercising his constitutional authority to commute sentences."

Although in the case at bar the governor was induced to act because of ORS 421.120, it does not follow

that in so acting he exercised anything less than his complete constitutional power to terminate the sentence. The situation in which the governor is placed by ORS 421.120 is clarified by pointing out that the governor had power to commute sentences regardless whether that statute was in effect or not. If the statute had been repealed, the governor could have continued without change the practice of releasing prisoners upon the recommendation of the warden using the identical good time credits specified in the statute. By the same token, he could have ignored the statute and adopted an entirely different system of allowing good time credits, and could have made this system uniform as to all prisoners or could have granted clemency to some prisoners and withheld it from some. In short, the power of the governor to commute sentences at any time and for any reason is unlimited.

The fundamental question involved in this case is whether the legislature may require the governor to terminate the sentence of a prisoner at times and upon conditions prescribed by the legislature. The majority holds that this duty may be imposed upon the governor by the legislature. It is interesting to note that no authority is cited to support this conclusion upon which the result reached by the majority directly depends.

It is now conceded by the defendant that ORS 421.120 insofar as it invokes the aid of the governor is not mandatory and that a statute which required the release of prisoners by the governor would be an invasion of the pardoning power. This is in accord with the result reached in *Fehl v. Martin*, supra, where this court rejected the contention made by KELLY, J. in his dissenting opinion that the portion of the former good conduct statute, § 13-1906, Oregon Code 1930, granting

certain credits for good behavior was mandatory. In the companion case of *Fehl v. Lewis,* 155 Or 499, 503, 64 P2d 648, the unanimous opinion of the court was written by Mr. Justice KELLY, who said in referring to *Fehl v. Martin,* supra:

"* * * They think that at all times it is *within the discretion of the governor* to disregard the good conduct, industry and evidence of general reformation on the part of the prisoner and the certified record thereof. See Fehl v. Martin et al., ante p. 455 decided contemporaneously herewith, wherein these views are expressed in the prevailing opinion; Mr. Justice Bailey's in a specially concurring, and Mr. Justice Belt's, and the writer's in a dissenting opinion." (Italics supplied)

The conclusion that the legislature cannot impose upon the governor the duty to terminate the sentence of prisoners at times and upon conditions prescribed by the legislature is in accord with the great weight of authority. The courts of other jurisdictions have almost unanimously held that statutes which attempt to control or influence the commutation power of the chief executive are either advisory in nature or unconstitutional.

. In *Rich v. Chamberlain,* 107 Mich 436, 62 NW 584, a statute creating a board to *advise* the governor with regard to granting pardons and commutations was upheld although two of the justices wanted to hold that the pardoning power was so far removed from legislative interference that even an advisory board was unconstitutional. The recommendation of the board under the Michigan statute was akin to the certification by the warden of the industry and general reformation of the prisoner under ORS 421.120. The Michigan court made it clear that a statute which purported to require or compel action by the governor would be invalid.

In *Ex Parte Ridley,* 3 Okla Crim 350, 106 P2d 549, the court considered the validity of an act creating a board of pardons and providing that "No pardons, nor paroles shall be granted by the Governor until he shall present the matter to and obtain the advice of the Board of Pardons and Paroles." The Oklahoma constitution was similar to our constitution in that it vested in the governor the power to grant pardons "subject to such regulations as may be prescribed by law." The court said:

"Under our Constitution the pardoning power is vested exclusively in the Governor of the state, and any law which restricted this power would be unconstitutional and void. The co-ordinate departments of the government have nothing to do with the pardoning power, except that the Legislature may by law provide how applications may be made, and is entitled to a report at each regular session of the action taken.

"* * * This constitutional provision is self-executing, and we believe that the legislative act creating the Board of Pardons is clearly unconstitutional and void. In it the Legislature has attempted to confer pardoning power upon other state officers, which is clearly an unconstitutional interference and infringement upon the executive power."

The Washington constitution vests the pardoning power in the governor "under such regulations and restrictions as may be prescribed by law." The legislature created a board of pardons and provided that all applications for pardons before being acted upon by the governor should be submitted to the board for its approval, rejection or such advice as it may deem proper. The Secretary of State refused to attest the signature of the governor on a pardon because the board of pardons had recommended a commutation

instead of a full pardon. The supreme court of Washington in *State, Ex Rel. Rogers v. Jenkins,* 20 W 78, 54 P 765, held that the legislature had not attempted by this act to limit the pardoning power of the governor and required the secretary of state to authenticate the pardon. The effect of such holding was to render the act advisory in nature.

The case of *Ex Parte Bustillos,* 26 NM 449, 194 P 886, involved pardons granted by the governor of New Mexico to certain followers of the notorious bandit Francisco Villa, all but one of whom had pleaded guilty to murder in the second degree and received life sentences in the penitentiary. The pardons had been granted contrary to the terms of a statute which read as follows:

"* * * but no convict, who shall have been sentenced to the penitentiary, shall be pardoned before the expiration of his time, or have his time commuted by the Governor, unless the same be first recommended by the board of penitentiary commissioners, * * *."

In construing such statute, the supreme court of New Mexico said:

"We have then this situation: A constitutional grant of the pardoning power to the Governor subject to regulation by law. Section 5087 provides not only regulation of the exercise of the power, but imposes a restriction upon the power itself. The section absolutely prohibits the exercise of the power without the previous concurrence and recommendation of the penitentiary commissioners. This is a plain invasion of the rights and duties of the executive. It lies with the penitentiary commissioners to absolutely nullify the grant and to prohibit the Governor from the exercise of his discretion in this regard. For this reason the section,

taken as a whole, must be held to be unconstitutional and inoperative. * * *"

The cases heretofore cited, *In Re Conditional Discharge of Convicts,* supra, and *Ex parte Costello,* supra, likewise support the conclusion I have reached in this case.

The case of *Laird v. Sims,* 16 Ariz 521, 147 P 738, stands virtually alone in opposition to the authorities cited above. In that case it was held that a statute which provided that no pardon could be granted by the governor unless first recommended by the board of pardons did not violate the constitution which vested in the governor the power to grant pardons "upon such conditions and with such restrictions and limitations as may be provided by law." For the reasons pointed out in the dissenting opinion of Cunningham, J., the majority opinion is unsound and entitled to scant consideration.

The opinion of the majority attempts to draw an analogy between good conduct statutes and statutes providing for the parole of prisoners although such statutes are admittedly not analogous in purpose. The majority call attention to the right of the legislature to enact a parole law which vests in the parole board the power to parole prisoners without any participation by the governor. This right is not questioned. Neither is the right of the legislature to pass a prospective good conduct statute without any participation by the governor. It is only when the legislature involves the power of the governor in its systems for the granting of paroles or good conduct credits that questions arise. If the legislature attempted to impose upon the governor a duty to terminate the sentence of a paroled prisoner upon the certification or recommendation of the parole board, we would have a situ-

ation analogous to the present case. Unless the recommendation of the parole board in such a case was purely advisory, the statute would be unconstitutional.

The Supreme Court of Illinois in *People v. Joyce,* 246 Ill 124, 92 NE 607, upheld a statute which provided that the state board of pardons should have the power to enter an order discharging a prisoner "which said order, when approved by the Governor, shall operate as a complete discharge of such prisoner in the nature of a release or commutation of his sentence to take effect immediately upon the delivery of a certified copy thereof to the prisoner, * * *." The court held in effect that this statute was purely advisory and being advisory did not infringe upon the pardoning power of the governor. We quote from the opinion:

> "It is further insisted that the final discharge of a paroled convict under the provisions of this section is an encroachment upon the executive powers of the Governor, and therefore unconstitutional. The act of the board of pardons under said section is nothing more than an investigation of the conduct of the convict whose case is under consideration. *It merely makes a recommendation to the Governor.* The discharge or commutation, as we have seen, is made by the Governor. This section does not infringe the constitutional right of the Governor to grant pardons, reprieves, and commute sentences. * * *"

As pointed out in our original opinion, a commutation may be granted with little formality. Technical terms are not necessary and the language used shall be construed most beneficially for the prisoner. By signing the letter of November 1, 1955, Governor Patterson directed that George Fredericks be released from the penitentiary on the date specified and nothing more was necessary to terminate plaintiff's sen-

tence. The governor had the power to terminate the sentence and clearly indicated his intention to accomplish that result when he directed defendant to release the plaintiff from the penitentiary.

The majority quote from *Carpenter v. Lord,* 88 Or 128, 171 P 577, which holds that a pardon is not effective unless it is accepted by the prisoner to whom it is offered. It is only necessary to point out that Fredericks unequivocally accepted the commutation by walking out of the penitentiary when the gate was opened for him. No formality was necessary.

Having concluded that the sentence of the plaintiff was terminated by the commutation thereof by the governor, it follows that such commutation can not be revoked by the warden and that the reimprisonment of plaintiff was unlawful. It has been stipulated that the plaintiff was not guilty of any fraud or other imposition upon the governor.

If the legislature can grant substantial good time credits to a prisoner previously sentenced and then require the governor to terminate the sentence whether he wishes to do so or not, the legislature has usurped in part the power of commutation vested exclusively in the governor by the constitution.

Believing that our former opinion should be modified in accordance with the conclusions stated herein, I dissent.

WARNER, J. concurs in this dissent.