Argued February 27, reversed and remanded with directions
March 12, petition for rehearing denied April 5,
petition for review denied May 22, 1973

BURNS, *Respondent, v.* NEWELL ET AL,
*Appellants.*
507 P2d 414

*William R. Canessa,* Assistant Attorney General, Salem, argued the cause for appellants. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Ralph W. G. Wyckoff,* Salem, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

## SCHWAB, C. J.

Petitioner brought this habeas corpus proceedings contending he had been arbitrarily and capriciously denied "good time" credits on the sentence he was serving. Defendants are the members of the Board of Parole and Probation and the Superintendent of the Oregon State Penitentiary. The circuit court ruled in petitioner's favor, computed what it believed to be the proper amount of good time credit, determined petitioner had completed service of his sentence based on

its computations, and ordered his release from custody. Defendants appeal. We reverse.

In certain circumstances, Oregon prisoners are entitled to good time credits which have the effect of reducing the sentence served. The relevant statute, ORS 421.120 (1) provides:

> "Each inmate now or hereafter confined, in execution of the judgment or sentence upon any conviction, in the penal or correctional institution, for any term other than life, and whose record of conduct shows that he faithfully has observed the rules of the institution, and where industry and general reformation are certified to the Governor by the superintendent of the penitentiary or correctional institution, shall be entitled, upon the order of the Governor, to a deduction from the term of his sentence to be computed as follows:
>
> "* * * * *"

The balance of ORS 421.120 (1) specifies various formulas for determining the amount of good time a prisoner can accumulate.

When a prisoner is paroled, but violates the terms of his parole, resulting in the revocation thereof, ORS 421.120 (2) comes into play. It provides:

> "When a paroled inmate violates any condition of his parole, no deduction from the term of his sentence, as provided in subsection (1) of this section, shall be made for service by such inmate in the penal or correctional institution prior to his acceptance and release on parole, except when authorized by the State Board of Parole and Probation upon recommendation of the superintendent thereof."

On September 28, 1955, petitioner began serving an indeterminate sentence, not to exceed 20 years, for conviction, based on his plea of guilty, of assault with

intent to commit robbery. On August 5, 1963, he was paroled.[1] In November 1963, petitioner and two other ex-convicts, all armed, robbed a bank in Sacramento, California. They escaped in a stolen car. When a police officer stopped them, one of petitioner's confederates shot and killed the officer. On November 18, 1963, Oregon officials, upon learning of petitioner's crimes in California, revoked his parole.[2] Petitioner was convicted of murder in California and began serving a life sentence there. On July 28, 1968, petitioner was transferred from California to the Oregon State Penitentiary, with California authorities filing a detainer for his return when he completed his Oregon sentence.[3]

Because his parole was revoked, by operation of ORS 421.120 (2), petitioner lost the good time credits he would otherwise be entitled to for the period of his pre-parole 1955 to 1963 incarceration. In June 1970 and July 1971, defendant Superintendent recommended to the Board of Parole and Probation that plaintiff's pre-parole good time be restored. The Board decided against restoring plaintiff's lost good time.

---

[1] Petitioner was informed of the provisions of ORS 421.120 (2) when, at the time of his parole, he signed and received a printed form that provided:

"THAT THIS PAROLE IS GRANTED TO AND ACCEPTED BY THE PAROLEE WITH THE FULL UNDERSTANDING THAT A VIOLATION OF ANY OF ITS TERMS MAY OPERATE AS A FORFEITURE OF ALL GOOD-TIME CREDITS, IF ANY, EARNED BY THE PAROLEE PRIOR TO THE EFFECTIVE DATE OF THIS PAROLE."

[2] Petitioner does not contend that his parole was improperly revoked.

[3] Apparently petitioner's transfer from California to Oregon was at his own request and for his own benefit in that under California law the time he spent in prison in Oregon was also regarded as time served concurrently under his California sentence.

■ The petition for a writ of habeas corpus challenged *only* the Board's decision not to restore petitioner's *pre-parole* good time. The circuit court's opinion concluded:

"* * * [T]his court finds * * * that petitioner is entitled to full credit for good conduct time actually served in the institution *both* before and *after* parole * * *." (Emphasis supplied.)

The circuit court's gratuitous determination concerning good time for the period since petitioner's return to the state penitentiary in 1968 is erroneous, in that it goes beyond the pleadings and proof in this case. There is no showing that petitioner is entitled to any post-1968 good time.

"It will be noted that petitioner was entitled to a reduction of his sentence for good conduct only if his 'record of conduct shows that he faithfully has observed the rules of the institution,' and if the warden certifies petitioner's 'industry and general reformation,' to the governor, and if the governor orders petitioner's release." *Gibbs v. Gladden*, 230 Or 272, 273-74, 369 P2d 772 (1962).

"* * * [U]nder our statute good conduct credits are contingent (a) upon certification by the warden to the Governor of the 'industry and general reformation' of the prisoner, and (b) upon the order of the Governor * * *." *State v. Cloran*, 236 Or 109, 112, 386 P2d 913 (1963).

Nothing in this record even suggests the required contingencies that would entitle petitioner to post-1968 good time have occurred.

Turning to the pre-parole good time question, petitioner contends the decision of the Board of Parole and Probation not to restore that good time is arbitrary and capricious. The parties seem to refer to petitioner's pre-parole good time as if it were a

vested right. However, we note ORS 421.120 (1) implies that no rights to good time vest unless and until the Governor takes final action in this regard. Both opinions in *Fredericks v. Gladden,* 209 Or 683, 308 P2d 613, 211 Or 312, 315 P2d 1010 (1957), indicate that the normal practice is for prison officials (1) to compute the amount of good time a prisoner is entitled to, thereby arriving at a release date, (2) on the eve of the release date, certify their computations to the Governor, and (3) upon receiving the Governor's approval, release the prisoner on the appropriate date. If this is the procedure used, as ORS 421.120 (1) appears to contemplate, then it would follow that a prisoner is never "entitled" to any good time unless and until the Governor orders his release on a certain date based on the good time computations.

Nevertheless, for present purposes we proceed on the assumption, but do not decide, that petitioner "accumulated" good time between 1955 and 1963 to which he was entitled until his parole violation and the operation of ORS 421.120 (2) resulted in his losing that good time.

For petitioner to now have his pre-parole good time restored requires: (1) the recommendation of the defendant Superintendent, ORS 421.120 (2); (2) the approval of the Board of Parole and Probation, ORS 421.120 (2); and possibly (3) action by the Governor, ORS 421.120 (1).

As noted above, defendant Superintendent has twice recommended to the Board of Parole and Probation that petitioner's pre-parole good time be restored. His recommendations were based solely on petitioner's conduct while at the state penitentiary. The Board of Parole and Probation met, considered the

Superintendent's recommendation, studied plaintiff's file, deliberated and unanimously voted not to follow the Superintendent's recommendation. The Board members testified in the proceedings below that it was their judgment that plaintiff's conduct while on parole outweighed his institutional conduct. The Board members noted that plaintiff's institutional record was also excellent between 1955 and 1963 before his parole, but that only three months after being paroled he committed several serious crimes, including being an accessory to murder of a police officer, in addition to violating many of the conditions of his parole.

■ Decisions of the Board of Parole and Probation are subject to judicial review on the very limited basis of whether they are arbitrary and capricious; plaintiff has the burden of proving the Board's decision violates this standard. *Anderson v. Alexander,* 191 Or 409, 229 P2d 633, 230 P2d 770, 29 ALR2d 1051 (1951); *Thompson v. Cupp,* 5 Or App 393, 484 P2d 858 (1971); *State ex rel Gilmore v. Cupp,* 1 Or App 22, 458 P2d 711 (1969). We hold this is the standard of review of a decision denying restoration of pre-parole good time, just as it is the standard of review for any other Board decision.

■ In deciding whether to restore pre-parole good time, the Board can and should consider the prisoner's conduct while on parole. Otherwise, there would be no point in involving the Board in such a decision, which the legislature has done by ORS 421.120 (2). *Cf., Anderson v. Alexander,* supra, 191 Or at 422:

"* * * Clearly, in determining whether there has been a violation of the conditions of a parole and in exercising discretion on the issue of the revocation of a parole, the statutes contemplate that the Board shall be guided by all of the mass of in-

formation which shall have become available to it under the administrative system * * *."

■ The Board of Parole and Probation did consider petitioner's conduct while on parole. The Board thought his conduct while on parole was a more reliable indication of his state of reformation than his admittedly excellent institutional conduct. On this record the Board's determination was neither arbitrary nor capricious.

The judgment of the circuit court discharging the plaintiff is reversed and this case is remanded with directions to dismiss the writ of habeas corpus and remand the plaintiff to the custody of the defendant Superintendent.